Clerk of the
Circuit Court

IN THE CIRCUIT COURT
FOR PRINCE GEORGE'S COUNTY
MARYLAND

2016 SEP -5 PM 3:34

| | |
|---|---|
| **Neil F. Letren** )<br>105 E. Mill Ave )<br>Capital Heights, MD 20743 )<br>)<br>*Individually and on* )<br>*Behalf of a Class of* )<br>*Persons Similarly Situated* )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**NASA Federal Credit Union** )<br>Serve: Douglas M. Allman )<br>300 E Street, SW, Suite GC-21 )<br>Washington, DC 20024 )<br>)<br>Defendant, )<br>)<br>**Specialized Loan Servicing, LLC** )<br>Serve: Nat'l Reg. Agents, Inc. of MD )<br>351 West Camden Street )<br>Baltimore, MD 21201 )<br>)<br>Defendant. ) | PR GEO CO MD #88<br><br>2016 SEP 22 PM 3:31<br>FILED U.S. DISTRICT COURT DISTRICT OF MARYLAND<br><br>CIVIL ACTION NO. CAL16-27770<br>**JURY TRIAL DEMANDED** |



Case: CAL16-27770
NEW CASE/PRO SE
CV CLERK FEE-        60.00
MD LEGAL SERV         55.00
[illegible]           50.00
TOTAL                165.00
Receipt # 47834
SJH  JHF  Blk # 114
Jul 05, 2016      03:36 PM

## CLASS ACTION COMPLAINT

The Plaintiff Neil F. Letren, individually and on behalf of all those similarly situated, states the following claims for relief against the Defendant NASA Federal Credit Union ("NFCU"), and Specialized Loan Servicing, LLC ("SLS").

## PRELIMINARY STATEMENT

1. Plaintiff brings this action pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 ("FCRA"), the Equal Credit Opportunity Act, 15 U.S.C. §1691 ("ECOA"), the Md. Code Ann., Com Law §14-1702, defamation and tortious interference.

**EXHIBIT A**

1



## PARTIES

2. The plaintiff is a natural person and has resides in Prince George's County, Maryland and is a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c) and an "applicant" as defined by the ECOA, 15 U.S.C. §1691a(b).

3. Defendant NFCU operates as a credit union offering personal and business banking services. The company was founded in 1949 and is based in Washington, District of Columbia. NFCU is a "user" of "credit scores" as those terms are defined at 15 U.S.C. §1681g and a "creditor" as defined by the ECOA, 15 U.S.C. §1691a(e), and a "lender" or "credit grantor as those terms are defined at §14-1701(d).

4. SLS, a third-party mortgage servicer, engages in the administration of residential mortgage loans in the United States. It offers a portfolio of performing servicing solutions, as well as customer communications, cash and asset management, loss mitigation, loan administration, debt recovery, and investor reporting services; and REO asset management solutions.

### General Allegations Relating to Mr. Letren

5. In May 2015 Mr. Letren applied with NFCU for mortgage refinance loan of his "Property" at 105 E. Mill Ave, Capital Heights, Maryland.

6. On July 22, 2015 NFCU representative, Tom Ryan, requested Mr. Letren provide the lien holder release for his Property.

7. In October 2015 NFCU representatives, Tom Ryan and Darlene Lough, advised Mr. Letren that his application was approved on certain conditions, one of which was proof that the Property was not encumbered by a deed of trust ("DOT").

8. As part of its loan underwriting process NFCU search the land records of Prince George's County to determine if the Property was encumbered by a DOT.

9. It is customary for a prospect lender to contact other lenders associated with a DOT listed against a prospect property to determine if or the amount of debt obligation on the property.

10. Upon information and belief NFCU's research led it to believe that defendant SLS had a security interest against the Property.

11. NFCU contacted SLS to inquire about the status of a DOT associated with the Property.

12. Upon information and belief NFCU explained to SLS that Letren was attempting to obtain a loan with it and that NFCU was making the customary call to determine if any debt was owed to SLS.

13. Upon information and belief SLS represented to NFCU that the Property was still encumbered by the deed of trust.

14. SLS' representation that it still encumbered the Property was false.

15. In January 2014 Mr. Letren paid the SLS debt in full and the DOT was no longer in force and effect.

16. Based upon SLS' false representations NFCU denied Mr. Letren's application.

17. NFCU failed to notify Mr. Letren pursuant to 15 U.S.C. §1691(d) that his loan application was being denied.

18. According to Mr. Letren's credit reports, NFCU obtained his credit reports on May 13, 2015 and July 28, 2015.

19. Upon information and belief NFCU used Mr. Letren's credit report and consumer credit score in connection with his loan application.

20. NFCU failed to provide Mr. Letren with the notice required by the FCRA, 15 U.S.C. §1681g(g), let alone provide the notice as soon as reasonably possible.

21. NFCU failed to timely provide Mr. Letren with the credit score required by the FCRA, 15 U.S.C. §1681g(g) as soon as reasonably possible.

22. NFCU's failure to provide the required credit score disclosures as soon as reasonably practicable caused harm to Mr. Letren..

23. Likewise, NFCU's failure to furnish Mr. Letren with adequate notice after taking adverse action or denying Mr. Letren's loan application, caused harm to Mr. Letren.

### Policies and Practices of NASA Federal Credit Union

24. NFCU regularly makes or arranges residential mortgage loans secured by residential real property.

25. NFCU regularly uses consumer credit scores in connection with applications from consumers for closed-end and open-end loans secured by residential property.

26. NFCU regularly fails to provide as soon as reasonably practicable the consumer credit scores to its consumer applicants whose consumer scores were used in connection with applications for closed-end and open-end loans secured by residential real property.

27. NFCU regularly fails to provide as soon as reasonably practicable the disclosures required by 15 U.S.C. §1681g(g) to its consumer applicants whose consumer credit scores were used in connection with applications for closed-end and open-end loans secured by residential real property.

28. NFCU regularly fails to provide a written statement required by Md. Code Ann., Com Law §14-1702(b) or 15 U.S.C. 1691(d) to its consumer applicants whose loan applications are denied or who are recipients of adverse action taken by NFCU.

29. At all times relevant to the matters alleged in this Complaint, NFCU's policy and practice regarding credit scores and credit reports were similar for all its consumer applicants denied credit card applications.

30. At all times relevant to the matters alleged in this Complaint, NFCU's policy and practice regarding loan application denials and adverse actions was similar for all its consumer applicants for loans secured by 1 to 4 units of residential property.

## Class Allegations

31. Mr. Letren brings this action individually and on behalf of all persons similarly situated pursuant to Md. Rule 2-231.

32. Mr. Letren seeks to represents the following defined classes:

**Section 1681g(g) Class.**

All persons (a) who applied for a consumer loan at NASA Federal Credit Union under either closed-end or open-end credit which was to be secured by 1 to 4 units of residential property, (b) beginning two years prior to the filing of this action, and (c) who were the subject of a credit score used by NASA Federal Credit Union in connection with the application.

**Section 1691(d) Class.**

All persons (a) who applied for a consumer loan with NASA Federal Credit Union, (b) beginning two years prior to the filing of this action, (c) who were the subject of a credit report used by NASA Federal Credit Union, (d) in which the application was denied, or (e) who was the target of an adverse action by NASA Federal Credit Union and (f) NASA Federal Credit Union failed to provide any notice of the denial.

33. The class is so numerous that it is impracticable to join all members of the class to this action. The names and addresses of class members are identifiable through

documents maintained by the Defendant, and the class members may be notified of the pendency of this action by published and/or mailed notice.

34. There are common questions of law and fact relating to the proposed classes, which include the following:

### 1681g(g) Class

a) Whether NFCU adhered to a policy of withholding credit scores from its customers;

b) Whether NFCU regularly uses credit scores in connection with applications for consumer loans secured by residential real property;

c) Whether NFCU was required to provide credit scores to its consumers who applied for consumer loans to be secured by residential real property;

d) What is the time period in which credit scores must be disclosed to consumers when such scores are used; and

e) Whether NFCU violated 15 U.S.C. §1681g(g) and if so whether the violation was willful

### 1691(d) Class

f) Whether NFCU regularly uses credit reports in considering consumer applications for mortgage loans;

g) Whether NFCU denied applicants of consumer loans secured by residential real property;

h) Whether NFCU provided a written statement to consumers whose loan application were denied or had adverse action taken by NFCU against them;

i)    Whether NFCU adhered to a policy of withholding notice of denial or adverse action to its applicants;

j)    Whether NFCU was required to provide a statement of reasons for denying the consumer loan application;

k)    Whether NFCU provided a statement of reasons for denying consumer loan applications; and

l)    Whether NFCU violated 15 U.S.C. §1691(d) and if so whether the violation was persistent and intentional.

35.   Mr. Letren's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same causes of action.

36.   The interests of members of the Classes will be fairly and adequately protected by Plaintiff. Mr. Letren is an adequate representative of the class because his interests coincide with interests of the members of the classes he seeks to represent; he will retain counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Neither Plaintiff nor his counsel will have any interests which might cause them not to vigorously pursue this claim.

37.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy. The damages suffered by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant NFCU's conduct. It would be virtually impossible for the members of the Classes to individually effectively redress the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation; it would be an unnecessary burden on the Courts.

## COUNT ONE: VIOLATIONS OF FCRA - CLASS CLAIM
### (as to Defendant NFCU)

38. Plaintiff incorporates the preceding allegations by reference.

39. NFCU failed to provide Mr. Letren and the 1681g(g) class members the notifications, information and disclosures required by the FCRA, 15 U.S.C. §1681g(g), as soon as reasonably practicable.

40. NFCU willfully violated the FCRA, 15 U.S.C. §1681g(g) and §1681n; or VHB negligently violated the FCRA, 15 U.S.C. §1681g(g) and §1681o.

41. Mr. Letren and the 1681g(g) class members have suffered damages as a result of this violation of the FCRA by NFCU.

## COUNT TWO: VIOLATIONS OF ECOA - CLASS CLAIM
### (as to Defendant NFCU)

42. Plaintiff incorporates the preceding allegations by reference.

43. NFCU failed to provide Plaintiff and the 1691(d) class members with the oral, written and electronic notice of denial or adverse action as required by the ECOA, 15 U.S.C. §1691(d).

44. NFCU willfully violated the ECOA, 15 U.S.C. §1691(d) and §1691e(b); or NFCU violated the ECOA, 15 U.S.C. §1691(d) and §1691e(a),(b).

45. Plaintiff and the 1691(d) class members have suffered damages as a result of the violations of the ECOA by NFCU.

## COUNT THREE: VIOLATIONS OF §14-1702 - CLASS CLAIM
### (as to Defendant NFCU)

46. Plaintiff incorporates the preceding allegations by reference.

47. NFCU failed to provide Mr. Letren and the 1691(d) class members the written statement required by Md. Code Ann., Com Law §14-1702.

48. NFCU negligently and willfully violated §14-1702.

49. Mr. Letren and the 1691(d) class members have suffered damages as a result of this violation of §14-1702 by NFCU.

## COUNT FOUR: TORTIOUS INTERFERENCE - INDIVIDUAL CLAIM
### (as to Defendant SLS)

50. Plaintiffs incorporate paragraphs 1-37 by reference.

51. Plaintiff had an conditional agreement for a mortgage loan with NFCU.

52. SLS knew about Plaintiff's agreement with NFCU.

53. SLS interfered with Plaintiff's aagreement and relationship with NFCU when SLS misrepresented to NFCU that the deed of trust was still encumbering the property.

54. SLS' interference caused NFCU to terminate its agreement to provide Plaintiff with a mortgage loan.

55. The Plaintiff suffered a loss credit opportunity and business opportunity and incurred other pecuniary losses as a result of NFCU's termination of loan agreement.

56. Upon information and belief SLS made the misrepresentation to NFCU as a means of retaliating against the Plaintiff for filing lawsuits against it.

57. SLS' actual knowledge that its representations were false, coupled with its intent to retaliate and harm, constitutes malice and therefore SLS is liable for punitive damages.

## COUNT FIVE: DEFAMATION - INDIVIDUAL CLAIM
### (as to Defendant SLS)

58. Plaintiffs incorporate paragraphs 50-57 by reference.

59. SLS's statement to NFCU that the Property was still encumbered by the DOT was false and done maliciously.

60. The Plaintiff was unable to obtain a $150,000 loan as a result of NFCU's decision to deny Plaintiff's loan application.

61. The Plaintiff lost a business opportunity because he did not obtain the funds from NFCU refinance loan.

62. Upon information and belief SLS made the misrepresentation to NFCU as a means of retaliating against the Plaintiff because the Plaintiff filed two lawsuits against SLS.

63. SLS' actual knowledge that its representations were false, coupled with its intent to retaliate and harm, constitutes malice and therefore SLS is liable for punitive damages.

## COUNT SIX: VIOLATIONS OF FCRA - INDIVIDUAL CLAIM
### (as to Defendant NFCU)

64. Plaintiffs incorporate paragraphs 1-37 by reference.

65. In conjunction with his loan application, Mr. Letren authorized NFCU to obtain his credit report in May 2015.

66. Mr. Letren did not authorize NFCU to obtain his credit report in July 2015.

67. Being that NFCU obtained Mr. Letren's credit report in May 2015, NFCU did not have any legitimate need, much less permissible purpose to obtain Letren's credit report in July 2015.

68. According to Letren's Experian credit report, NFCU obtained his report on May 13, 2016

69. NFCU denied Letren's application and did not extend any credit to him.

70. Mr. Letren does not have an account with NFCU.

71. Mr. Letren does not have any business or contractual relationship with NFCU.

72. In 2016 Mr. Letren has not received an offer of credit from NFCU.

73. Upon information and belief NFCU did not obtain Letren's Experian credit report for purposes of making a firm offer of credit or to conduct an account review or for purposes of debt collection.

74. In July 2015 and May 2016, NFCU had actual knowledge that Mr. Letren did not request credit from or otherwise initiate a business transaction with it.

75. As such, when NFCU requested and obtained Plaintiff's credit information on July 2015 and May 2016, NFCU had actual knowledge that it did not have a permissible purpose under the FCRA to obtain such information.

76. NFCU's actions in requesting and obtaining Plaintiff's personal credit information with actual knowledge that it did not have a permissible purpose to do so, constitutes a knowing and willful violation of the FCRA for each such inquiry it made.

77. After a reasonable time to conduct discovery, Plaintiff believes he can prove that NFCU has received hundreds, if not thousands, of disputes from consumers like Plaintiff, complaining of the same conduct as alleged in this complaint, with respect to NFCU's practice of obtaining consumers' credit reports without proper authority to do so.

78. After a reasonable time to conduct discovery, Plaintiff believes he can prove that despite consumers' disputes, NFCU intentionally, knowingly and recklessly chooses not to correct its policies with respect to obtaining credit reports without a legal purpose to do so.

79. After a reasonable time to conduct discovery, Plaintiff believes he can prove that NFCU has engaged in a pattern and practice of wrongful and unlawful behavior with specific respect to its illegal accessing of consumer reports for promotional inquires when it fact NFCU had no intention of making a firm offer of credit to those consumers.

80. After a reasonable time to conduct discovery, Plaintiff believes he can prove that all actions taken by employees, agents or representatives of any type for NFCU were taken within the scope of their employment, agency, or representation.

81. The Defendant NFCU willfully and intentionally violated the FCRA, 15 U.S.C. §1681b(f) by using or obtaining Plaintiff's consumer reports on at least once occasion without Plaintiff's consent and without a permissible purpose as defined by §1681b.

82. As a direct and proximate result of NFCU's violations of the FCRA, Plaintiff has suffered and will continue to suffer considerable harm and injury including, but not limited to: mental anguish and emotional distress from the ongoing invasion of their privacy and the possibility of future unauthorized inquiries into their personal financial information and/or risk of additional instances of identity theft resulting from such inquiries, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

83. NFCU's conduct reveals a conscious and reckless disregard of Plaintiff's rights, entitling Plaintiff to statutory damages in an amount of up to $1,000.00 per violation, and punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

84. The harm suffered by Plaintiff is attended by circumstances of fraud, malice and willful misconduct, entitling Plaintiff to punitive damages pursuant to § 1681n(a)(2).

### JURY DEMAND

85. Plaintiff demands a trial by jury on behalf of himself and the Classes.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in his favor for the following:

(a) Certification of the proposed Class;
(b) Statutory and punitive damages;

(c) Jury award for compensatory, special, economic and actual damages;
(d) Approval of a $15,000 to $25,000 incentive award for Plaintiff;
(e) Award costs and reasonable attorney's fees and costs;
(f) Any such other relief the Court deems just, equitable and proper.

**Date: June 22, 2016**

Respectfully submitted,

**NEIL F. LETREN**

*[signature]*

Neil F. Letren, Pro Se Plaintiff
105 E. Mill Avenue
Capital Heights, MD 20743
(240) 838-6601
neilletren@msn.com